WYC:RMT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# M-10-1012

- - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION FOR
SEARCH WARRANTS FOR:

THE PREMISES KNOWN AND DESCRIBED AS
ONE COMPUTER HARD DRIVE, SERIAL
NUMBER Y61P6Q5E, LOCATED AT LIQUID
TECHNOLOGY, BROOKLYN ARMY TERMINAL,
140 58TH STREET, SUITE 3M, BROOKLYN,
NEW YORK 11220

- - - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF
A SEARCH WARRANT

(T. 18, U.S.C., §
1029(a)(1))

EASTERN DISTRICT OF NEW YORK, SS:

SAMUEL KOFFMAN, being duly sworn, deposes and states

that he is a Special Agent with the United States Secret Service,

duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to

believe that there is currently being kept and concealed within

ONE COMPUTER HARD DRIVE, SERIAL NUMBER Y61P6Q5E, LOCATED AT

LIQUID TECHNOLOGY, BROOKLYN ARMY TERMINAL, 140 58TH STREET, SUITE

3M, BROOKLYN, NEW YORK 11220 (the "SUBJECT HARD DRIVE"), the

items described in the Attachment hereto to this affidavit, all

of which constitute evidence, fruits and instrumentalities of

violations of Title 18, United States Code, Section 1029(a)(1).

The source of my information and the grounds for my

belief are as follows:[1]

---

[1] Because the purpose of this affidavit is only to
establish probable cause to search, I have not included each and

1.   I have been a Special Agent with the United States
Secret Service ("Secret Service"), Electronic Crimes Task Force,
for approximately four years.  In the course of my tenure with
the Secret Service, I have been involved in numerous
investigations and prosecutions of access device fraud and
computer trespassing and intrusion, known colloquially as
"hacking."  In the course of those and other investigations, I
have conducted physical surveillance, supervised or participated
in undercover transactions, executed search warrants, debriefed
cooperating defendants and confidential informants, reviewed
computer records, and secured other relevant information using
other investigative techniques.

2.   Since approximately October 2007, the Secret
Service has been investigating an international conspiracy to
hack into the computer systems of financial institutions and
other businesses in the United States for the purpose of stealing
confidential financial account information, which the hackers in
turn sell to individuals in the United States and other countries
over the Internet.  The hackers and their associates generally
transmit this information via instant messenger services such as
Microsoft Instant Messenger and "ICQ" (an instant message service
similar to Instant Messenger; the acronym stands for "I seek
you"), or via electronic mail.  The purchasers of that stolen

---

every fact known to me concerning this investigation.

financial information use the account numbers to encode plastic credit cards, which they then use to withdraw currency from automated teller machines ("ATMs") located at banks in the United States and elsewhere in a scheme known as a "cashout."

3.    As part of this investigation, on or about April 7, 2008, the Office of International Affairs of the Department of Justice requested the assistance of the Dutch law enforcement authorities in tracking all computer traffic with certain servers owned by the Dutch company LeaseWeb that were suspected of being used in the scheme (the "LeaseWeb Servers"). The Competent Authority of the Netherlands acceded to this request and authorized interception of those servers for a 30-day period, which was renewed on or about May 9, 2008.

4.    "ICQ UIN # 195004767" came to the attention of the Secret Service in April 2008 during the course of monitoring traffic on the LeaseWeb Servers. On April 18, 2008, authorities intercepted an instant message conversation over ICQ in which ICQ UIN # 195004767 posted the following information about two Western Union transfers reflecting funds being transferred from Brooklyn to the Ukraine:

> a.    MTCN: 693-156-5273
> $2,500
> Sender: Juri Blinder - Brooklyn, NY, 10913
> Receviver: Roman Frolov Ukraine Zhitomir

      b.    MTCN: 651-857-8269
            $2,500
            Sender: Stan Grishin - Brooklyn, NY, 11224
            Receiver: Maksim Laptev Ukraine Odessa

ICQ UIN # 195004767 then posted in Russian, "Right now I'm scared to send 2 at the same time in one day. Here, take 5,000 for now."[2]

      5.    On or about April 21, 2008, in an instant message conversation with an unidentified individual, ICQ UIN # 195004767 discussed difficulties he had cashing out certain cards. The unidentified participant asked if ICQ UIN # 195004767 encoded the cards correctly, and then provided him with card numbers and other relevant data that the Secret Service has determined were fraudulently acquired.

      6.    On or about April 21, 2008, in an instant message conversation with an unidentified individual, ICQ UIN # 195004767 posted an ATM error message and described other difficulties he had cashing out certain cards, providing specific card numbers.

      7.    On or about May 5, 2008, in an instant message conversation with ICQ UIN # 710002, ICQ UIN # 195004767 posted information pertaining to a Western Union monetary transfer, indicating that funds had been transferred from Brooklyn to the

---

    [2] The quoted excerpts and summaries set forth in this affidavit are based on preliminary Russian-to-English translations that have been prepared during this investigation.

Ukraine.  ICQ UIN # 195004767 then discussed future monetary
transfers.

8.     By monitoring Internet traffic on the LeaseWeb
Servers and reviewing intercepts like the ones discussed above,
the Secret Service has determined that the individual using ICQ
UIN # 195004767 has knowingly and with intent to defraud
attempted to effect transactions with at least nine fraudulently
acquired access devices in or about and between April 2008 and
May 2008 to receive payment and other things of value during a
one-year period, the aggregate value of which was equal to or
greater than $1,000, in a manner affecting interstate commerce.
All nine of those access devices are linked to accounts at
MetaBank, an FDIC-insured bank.

9.     The ICQ public website indicated the nickname
associated with ICQ UIN # 195004767 was "D boy."  Subscriber
records from America Online for ICQ UIN # 195004767 showed that
account was accessed via IP address 66.11.209.34 on April 13,
2009 at 2032 hours (GMT).

10.    A Domain Name Service (DNS) lookup of IP address
66.11.209.34 revealed that this IP address was registered to M5
Networks.

11.    M5 Networks business records indicated that the IP
address 66.11.209.34 was registered to a company called Liquid
Technology.

12.   On or about October 9, 2009, a Secret Service agent went the Liquid Technology office in Manhattan where the company's chief executive officer works.  The CEO told the agent that one of his employees was named STANISLAV GRISHIN.  At that time, GRISHIN had been employed by the company for approximately three years.

13.   Subscriber information subsequently received from America Online revealed that ICQ UIN # 195004767 was also accessed on numerous occasions via IP address 69.193.195.14, including as recently as December 19, 2009.  Subscriber information received from Time Warner, the owner of this IP address, indicates that on the dates and times that IP address was used to access ICQ UIN 195004767, the IP address was registered Liquid Technology's office at 140 58th St, Suite 3M, Brooklyn, New York 11220.  The Secret Service subsequently learned that GRISHIN worked in this Liquid Technology office located in Brooklyn.

14.   On April 6, 2010, a grand jury in the Eastern District of New York returned a three-count indictment charging GRISHIN with conspiracy to commit access device fraud, contrary to Title 18, United States Code, Section 1029(b)(2), attempted access device fraud, contrary to Title 18, United States Code, Section 1029(a)(1), and aggravated identity theft, contrary to Title 18, United States Code, Section 1028A(a)(1).  GRISHIN was

arrested by the Secret Service on April 28, 2010.  That case is currently pending before the Honorable Nicholas G. Garaufis.

15.  On or about the date GRISHIN's arrest, the Secret Service contacted Liquid Technology and informed the company about the pending indictment.  In response, and at the request of the Secret Service, Liquid Technology secured the SUBJECT HARD DRIVE from GRISHIN's computer at work in a company safe so as to preserve any possible evidence that might be stored thereon.

16.  Based on my training and experience in similar investigations, and on the facts set forth above, I know that individuals involved in this type of access device fraud scheme routinely use computer and computer-related equipment to access the Internet in order to collect and exchange account numbers in the following ways:

    a.  The Internet allows any computer to connect to
        another computer.  By connecting to a host
        computer, electronic contact can be made to
        literally millions of computers around the world
        through the use of chat rooms, chat services such
        as ICQ, and email.  The Internet allows users,
        while still maintaining anonymity, to easily
        locate other individuals interested in trading
        fraudulently acquired account numbers.  These
        communications can be quick, relatively secure,
        and as anonymous as desired.  Sometimes the only
        way to identify parties engaging in the exchange
        of fraudulently acquired account numbers over the
        Internet is to examine the recipient's computer,
        including the Internet history and cache[3] to look

---

[3] "Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a website accessed by the user in order to allow the user speedier access

for "footprints" of the websites and data accessed by the recipient.

b.    The computer's capability to store data including account numbers is crucial to access device fraud schemes. The size of the electronic storage media (commonly referred to as a hard drive) used in computers has grown tremendously within the last several years. Hard drives with the capacity of over 250 gigabytes are common. Because many of the individuals involved in such schemes have sophisticated knowledge of computers, those individuals often take measures to conceal or delete evidence of their illegal activities. Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

c.    With Internet access, a computer user can transport data from the Internet or from another user's computer to his own computer, so that the information is stored in his computer. The process of transporting a file to one's own computer is called "downloading." Importantly, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools. When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

---

to and interaction with that website.

Similarly, passwords and transcripts from Internet chats may be stored by a computer's operating system.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or when a communication was sent or received than on a particular user's operating system, storage capacity, and computer habits.

17.  Based upon the facts set forth above, there is probable cause to believe that the items listed in Attachment A, will be found within the SUBJECT HARD DRIVE and that those items constitute evidence, fruits or instrumentalities of violations of Title 18, United States Code, Section 1029(a)(1).

        WHEREFORE, your deponent respectfully requests that a

search warrant be issued authorizing agents to search THE

PREMISES KNOWN AND DESCRIBED AS ONE COMPUTER HARD DRIVE, SERIAL

NUMBER Y61P6Q5E, LOCATED AT LIQUID TECHNOLOGY, BROOKLYN ARMY

TERMINAL, 140 58TH STREET, SUITE 3M, BROOKLYN, NEW YORK 11220 and

therein to seize the items described in Attachment A, all of

which constitute evidence of access device fraud contrary to

Title 18, United States Code, Section 1029(a)(1).


                                SAMUEL KOFFMAN
                                Special Agent
                                United States Secret Service


Sworn to before me this
1st day of September, 2010


THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**ATTACHMENT A**

All records of electronically stored information relating to violations of Title 18, United States Code, Section 1029(a)(1), including:

1.    records of user preferences, including but not limited to, the name and Internet address of any "favorite places" or "book-marked" websites, along with any "address books," "buddy lists," or "member profiles";

2.    records of internet activity and history of websites visited;

3.    opened, unopened, deleted, sent, received and draft email, including any attachments, whether saved or deleted;;

4.    records of passwords, login names, dates, times and activity; and

5.    electronic "chat," or communications.